Good morning. We start here from the premise that federal policy manifests a liberal policy favoring arbitration. In the case of a statutory claim, such as we have here, it is the plaintiff's burden to show that Congress wholly intended to preclude arbitration, and in this case, to show that someplace in the Credit Repair Organizations Act, or the CROA, as I'll refer to it, that Congress intended to trump, effectively trump, the Federal Arbitration Act. That's a heavy burden for the plaintiffs to meet. We don't think they did it, and we think the district court erred in finding that they did. The linchpin of their argument is the phrase, that appears in Section 1679C, which is the section that governs the disclosures, the notices, the disclosures that must be given to the consumer prior to the commencement. It's true that Congress put it in the disclosure instead of saying that's the operative right, but why would they require, and I know the Third and Eleventh Circuits support your reading, but I still am not clear on why Congress would require the consumer or the credit repair organization to tell a consumer you have a right to sue when they don't. Well, I think the short answer to that, Judge, is that the two sections serve different purposes. 1679G, which is the section that addresses civil liability and actually confers the right to assert a claim, serves that purpose. 1679C, which is the notices that go to the consumer, the purpose there is to provide something to the consumer, not to a lawyer, not to a judge, not to a court, but to an average Joe, the reasonable consumer, the least sophisticated consumer, whatever standard we want to use under these statutes, of a basic shorthand of what their rights are and what the obligations are. Yes, sue. Sue. And I'm not sure, Judge, I can't say that an average consumer would read the right to sue and say, aha, no arbitration. And that right to sue meant you go to court and sue somebody. Well, I think it can mean you have the right to bring a claim to obtain relief. Well, why wouldn't Congress just have said that? Why would you, if you're trying to communicate in clear language to an unsophisticated average Joe what his or her rights are, and you say you have the right to sue but you don't, I mean, why would Congress require? I have the same question. It seems like a, I guess in a broader sense, why would you communicate a notification for a falsehood? Well, but it's not. And I think that if you don't have the right to sue, and not to quibble with you, but you know, I mean, we're not quibbling. We're honing in on exactly what the point is, because once this linchpin comes out of the argument, the whole thing collapses. But I think it goes back, again, to the point of what the purpose of this notice is. And I don't think it is a miscommunication to the consumer or misleading. I think it is Congress, in its wisdom, decided we're not talking to lawyers, we're talking to average consumers. And if you look at some of the case law that comes out of the other statutes under this umbrella act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, there is an emphasis on trying to communicate at that level. Well, sure. But why doesn't, you're saying sue doesn't mean sue. It means claim. That's what you're saying. And if Congress wanted to communicate clearly to the average Joe or, you know, Judy, whatever we might say, why wouldn't they say you have a right to make a claim instead of a right to sue? Because what you're saying, if I'm understanding your argument, is that really sue doesn't mean sue. I'm saying sue means, in layman's terms, I think sue means bring a claim. Boy, I don't. To me, sue was a layman. I was just trying to think of what it meant. When I opened my law office, my mother gave me a telephone book cover, had a picture of a lawyer, and it said, sue the bastards. And you knew what that meant. I knew what it meant. It meant you go to court. The idea for a layman, my mother's a layman, she's not a lawyer, was it meant you don't have to ask the company that's doing you wrong if they'll please give you a break. I think it means you go to a neutral third party, a court, and they can order the company to do the right thing. Well, I think this discussion we're having nearly underscores my point. And I think it was either Judge Posner or Judge Easterbrook in my home circuit that said in an FDCPA case that we lawyers, federal judges, are not good proxies for the unsophisticated consumer or the average consumer. And I think this is part of what we're talking about here. I guess I have to agree with the observation of Judge Kleinfeld. I just don't know of anybody, layman, who would think that sue means arbitrate. And if you go out there, I think people understand claims and going to an agency, perhaps, but filing something with somebody else, and they say sue, they can go to court. That was my thinking, too. Claim is lousy. It's like when your medical insurer won't pay for some pills that got prescribed, and you make a claim, and they turn you down, and by and large, that's the end of it. Well, let me make two more points. If a consumer is reading that disclosure notice that precisely, then presumably they're reading the contract that precisely, and they're reading the arbitration clause that precisely, and they're seeing what's in there and are going to have to try to reconcile those two things. Well, how do you reconcile it? I mean, you can't. It's a contract of adhesion, right? It's a take-it-or-leave-it provision with the consumer. Then they leave it. Right. I mean, there's no reconciling it. You just say, I don't want the credit, you know. And the second point is, even if we think that Congress could have expressed the nature of this right more precisely in the disclosure form, even if we sit here and we think they should have said right to bring a claim, not right to sue, that doesn't mean that we create a right out of the disclosure form that isn't granted in the civil liability section. I mean, you have to go back to the civil liability section. You have to go back to 1679G, which doesn't say anything that could possibly be construed as precluding arbitration. And that civil liability section is almost identical. It doesn't say anything supporting it either. Exactly. It says that a consumer credit repairer, or whatever they call them, that doesn't comply with all the provisions, shall be liable to the consumer. And then it gives minimum amounts of liability damage calculations. I agree. It doesn't say that it supports it either. And that's the point. Plaintiffs have to come in and show that Congress clearly invents an intention to preclude it. Well, I'm sorry to interrupt, but it's a consumer, even if the consumer had not waived the right to go to court, could come in and say, you know, I prefer to arbitrate this. Will you arbitrate? And forgetting the waiver clause, maybe it seems to me when you say we're allowing arbitration, doesn't necessarily mean that it affects waiver or not. It just says, well, you can arbitrate, you can sue, but you can't waive your right to sue. In other words, a company can't force you to arbitrate. That's one plausible construction of the statute. You're frowning at me, so you obviously don't agree. Well, no, no. And I'm sorry, I'm not trying to telegraph anything. That's more just – well, I think maybe what we're stepping into is sort of the second argument. The second point when we talk about the scope of the anti-waiver provision. And I can address that, but my point is you don't even need to get there. We don't even need to start debating the scope of the anti-waiver provision if you accept the point that the right to bring a claim, be it in a Federal district court, a State court, an arbitration of alternative dispute resolution, that right derives from 1679G, and 1679G doesn't contain anything that invents as an intent by Congress to preclude arbitration. No. My only point was I'm not sure how instructive that is, because I think I agree with you completely. It doesn't preclude arbitration one bit. But maybe you can't waive your other rights. In other words, the fact that you can arbitrate this claim, and if parties can agree to arbitrate, may or may not be instructive on whether or not Congress intended to allow consumers to waive the right to go to court. Am I being clear or not? Certainly, Congress in the anti-waiver provision of the statute said that you cannot the credit repair organization cannot compel or contract with the consumer to waive certain substantive rights. For instance, I could not ask you to waive your right to receive a disclosure. I could not require you to waive your right to not have to make payment until after the services are provided, and so on and so forth. I'm not sure if I'm answering your question. No, you are. Well, you better help me with something else before you run out of time to do it. I will try, sir. CompuCredit wants us to take judicial notice of a consent decree from a county court in Minnesota in which the National Arbitration Forum agreed to get out of the business of arbitrating consumer disputes. And they want us to take, or I guess that's you want us to take, judicial notice of an American Arbitration Association news release saying they won't accept consumer debt collection arbitration cases. So I'm wondering whether we need not ever reach the question of whether we agree with the Third and Eleventh Circuits because this whole thing is moot. The contract says arbitrate in front of the National Arbitration Forum, and that's now an impossibility, and there's not even a reasonable substitute that's possible. Well, that's not true, Judge. There is. And just for a point of clarification, it was the plaintiffs that requested that you take judicial notice. Sorry, I'm upset. Not us. But it's fine. It's certainly a legitimate issue that has to be addressed here. And the short answer to that is at the time we briefed, at the time we concluded the briefing, there were only two cases that had addressed this issue of what do you do with this arbitration clause now that NAF is out of business. NAF agreed to discontinue. Is NAF out of business? Yes. NAF agreed to discontinue consumer arbitrations as a result of settlement with the Minnesota Attorney General, and they are out of the business. However, that doesn't mean that the arbitration clause in this case is unenforceable for two reasons. First, we provide for an alternative forum. Our clause specifically says that in the event that NAF is unavailable, and, you know, these things can happen as a result of a lot of different circumstances. I mean, here it was a result of a settlement with a government regulatory agency, but sometimes they can just go out of business. But ours says in the event that NAF is unavailable. Ours says, the contract says? Our contract, our arbitration clause, yes, sir, says that in the event that NAF is unavailable for any reason, we will substitute another nationally recognized forum with a similar code of procedure. And there are at least two of them. You get to pick the arbitrator? I believe that, just as we did initially, yes, I believe it allows us to. Well, it's not just as you did. Initially what happened was treating this as a contract between parties negotiating at arm's length. Both parties picked the arbitrator. The consumer and the credit repairer agreed, we'll use NAF. But what you're saying is now the credit repair organization gets to pick another arbitrator and it does not cause the contract to fail for impossibility. What the consumer and CompuCredit and CVT agreed to was we will use NAF, and they further agreed together that if NAF was unavailable, we would substitute another forum. And there are at least two that meet this definition in the contract. There's AAA and there's JANS. And AAA has not, contrary to what the plaintiffs have represented, and you can go look this up on their website, and we did as recently as last week, AAA has not discontinued arbitrations over these kind of consumer claims. Those both cost a fortune for both parties, don't they? No, they don't. Wouldn't a consumer have to pay a lot of money? I don't believe so, Judge. I forget what the fee is associated with this, but I don't believe that it is. And what about JANS? JANS will accept this kind of an arbitration. So will AAA. AAA has said we won't take any more consumer debt collection arbitrations. In other words, if we were suing the consumer to pay the debt on JANS, don't you have to split those $1,000-an-hour fees between the two parties? I don't think I've ever had $1,000-an-hour arbitration over there, but we would have to look at what the code or what the rules. But if we were to get into this issue, wouldn't our best course simply be to remand to the district court to sort it out, to see whether or not any of these entities meet the definition of the contract? I realize we're talking a bit outside the record here for the completeness of the argument, but if we were to decide on that basis, we'd have to remand, wouldn't we? Well, I think you could. On the other hand, and indeed, the Federal Arbitration Act, as you know, also contains a provision to just that effect. So if some were to object, as you indicated, to maybe the unfairness of having the defendant pick the arbitrator,  I was thinking arbitration certainly has its advantages, but if you can go to small claims court and pay your filing fee and your service of summons and complaint fee and you're still under $100 and you go to arbitration and it costs you $1,000 even just to put your auntie in the pot. Well, again, Judge, I can't recite what the fees are associated with these other organizations. But, again, as you suggest, I suppose one alternative would be if we're going to follow the provisions of the FAA that specifically provides that if the arbitrator becomes unavailable, the district court can select and designate an arbitrator. But it certainly doesn't make the clause. Or the district court could find out whether it's moot or not. I mean, consider that argument in the first instance. I'm not saying we should. I'm just exploring with you. Right. And Judge Wilkins just didn't have the opportunity to do that because it wasn't ripe in front of her. Right. In fact, in the Caradillo case, which is the Western District of Washington case, I believe that came up to this Court on an arbitration clause having to do with whether Washington law would preclude arbitration. It was remanded back down to the district court. And at that point, the district court in Cartiero found that the arbitration clause was unenforceable because it only designated NAF. It didn't have any alternatives. And there was no severability clause in the arbitration provision, which we have in ours. And I believe that case is pending in front of this Court right now. So I believe in that case you were going to confront it dead on, based on the district court's finding about whether the dissolution of NAF serves to void the arbitration clause. But that case is factually different than ours for those two reasons. We've run out of time, unfortunately, so I'd better ask you to wind it down. Yes, sir. Thank you. Thanks, counsel. May it please the Court. I'm Lloyd Copeland, representing the plaintiffs. The issue before the Court is whether Congress against an intention in the statutory text to preclude a waiver of judicial remedies for Crow's private right of action. Counsel, the Third Circuit and the Eleventh Circuit both say that your adversary is correct. Yes, sir. If we go with the district court's analysis and say your analysis is correct, it's pretty likely to have the Supreme Court deciding whether to reverse the Ninth Circuit yet again. So I want to know exactly what to say if we do decide to go your way that would persuade them not to do that. I think the issue is resolvable primarily through this analysis, which I will give the Court in a nutshell, and it answers the defendant's argument that the disclosure form doesn't actually create rights, that the private cause of action is not. I think that was the Third and Eleventh Circuit rationale. Well, the Third and Eleventh Circuit rationale was part of it. The rest of it was this noncompliance in the title, which I can get to in a second if the Court wants to hear about that. But I think that the answer to the question is if the word sue has its ordinary meaning and there's no indication that it doesn't, an undefined statutory term is to be given its ordinary meaning. Counsel, you're giving your argument in chief, and it's a good argument, but I'm asking a different question. I'm asking you to write the paragraph that says why the Third and Eleventh Circuits are wrong orally. So tell us. The Third and Eleventh Circuit's primary rationale was with the title of the statute, that by using that to import noncompliance into the text of the nonwaiver provision. That was simply wrong because the title of the heading is not considered unless there's an ambiguity in the text. I suggest to the Court there is no ambiguity whatsoever in the text of the nonwaiver. The Third and Eleventh Circuit both sidestep that. The Third Circuit quoted the principle that you can look at the heading of a section, to resolve ambiguity, but they never explained why there was an ambiguity. And Eleventh Circuit did not even get to that at all. They didn't even get to the principle. They just followed the Third Circuit's rationale and launched right into the importing compliance into the statute. That's the primary reason they're wrong. So the reason they're wrong is they rely on the title. The word sue is unambiguous. Without an ambiguity, you can't rely on the title. Yes, sir. Got it. So why isn't it not ambiguous when Congress put in the phrase or any other person later in the statute? Why doesn't that create the ambiguity that justifies reliance on the title? The phrase or any other person, if that is construed to include an arbitrator, then that ignores the plaintiff the ordinary meaning of the word sue. Well, if you say federal or state court or any other person, what does it mean? What does that phrase mean? If it construed consistently with the ordinary meaning of sue, I think it can mean this. There are CROA has protections as well as rights. The statute, the non-waiver statute is quite specific. It talks in terms of any waiver by a consumer of any protections provided by the Act or of any rights of the consumer under the Act. The CROA has protections that can be gotten at by an arbitrator without a consumer filing a claim under CROA's private right of action. And I'm talking about, as we mentioned in the brief, collection provision, collection proceedings brought by the credit card company, which have become quite popular with entities that have arbitration provisions. When we were getting ready for this case, I noticed that I believe in 2008 the city attorney of San Francisco had sued the National Arbitration Forum claiming they run an arbitration collection mill. And notwithstanding the truth or invalidity of those allegations, that illustrates the point of the collection proceedings that are undertaken. And there are a number of protections.  But there's a number of protections provided. Such as there's no payment required until a service is fully performed. The contract has to state the total amount of all payments. There's no open-end contract. And these are all protections that could come before an arbitrator in a collection proceeding, when the company wants to arbitrate. And because they can't be waived, they would be void. And that would also create, it would also void the contract. It would create a defense to the collection proceeding. Have I answered you, Judge Stein? Yes. Here's a follow-up. I gather, then, you're conceding that arbitration is permitted under the statute. I think arbitration is a one-way. It is. My reading of it is arbitration is a one-way street. The company can arbitrate claims that it has. And there's typically collection proceedings. That's what they're going to have. But that the consumer can't waive the right to sue. And I apologize, Judge Thomas. I had trouble hearing a lot of the exchange between you and counsel opposite. And if you'd like to go into that, your reading of the statute is not. I was positing that perhaps the consumer could elect to arbitrate. But I don't think there's much doubt that arbitration isn't expressly prohibited in the statute. Would you agree with that? Arbitration by the credit repair organization against the consumer is not prohibited. I'm sorry? Arbitration by the credit repair organization in a collection proceeding against the consumer is not prohibited. The consumer has the right to sue. But the credit repair organization is not prohibited from having an arbitration agreement and pursuing the consumer in collection proceedings. Well, I understand your point about waiver. But you're leaving a bit out of your answer. Do you think that a consumer has the right to arbitrate? That's a different question from waiver. To be honest with you, Judge Thomas, I haven't completely thought that through. My position coming in here was that if you can't waive your right to sue, then you can't arbitrate. And I haven't completely thought through your question. So for right now, I'm going to stick with the position that I walked in here with. What about the judicial notice? I can't say I've ever seen judicial notice of a press release where it wasn't stipulated to. I guess judicial notice of a judgment is pretty common. And what effect would it have, if we take judicial notice, considering your adversary's point that the contract says if the arbitrator we've named isn't available, we can just pick somebody else? Well, I don't think there's much dispute that the National Arbitration Forum is no longer doing. I don't think there's any dispute over that, no longer doing consumer arbitrations. They're out of business altogether? That is my understanding, as far as consumers are concerned. Now, the American arbitration system is different. So how does that help you? You raised it. How does it help you? Well, that was positive in the event the court determined that the right to sue in court was waivable under the statute. And the arbitration agreement in this case, well, the short answer to that is I think it would help us and it would get a remand back to the district court. I see. Okay. I think that's what would happen. There's some unresolved fact questions. And the case law I've looked at indicates that, as we say in Alabama, where I'm from, this is again me, but I'm going to cough it up for the court. The case law I've read is that if you have an alternate arbitration provider provided and the primary provider goes out of business, that doesn't void the arbitration agreement. But this is a little bit different because they say another nationally recognized arbitration provider with a similar code of procedure, and with a similar code of procedure is the kicker. That seems to be bound together. I'm honestly not familiar with the AAA or JAMS procedures, but that would require some fact-finding by the district court as to whether that's – well, the district court – It's super fair, but you have to pay a lot of money. Pardon me, Judge Holmes. They're real fair, but you have to pay a lot of money. JAMS you do. The American Arbitration Association I'm not familiar with. Well, that all – in the credit repair organization's view, that all doesn't matter because of Section 5 of the Arbitration Act says district court can appoint the arbitrator anyway. It does in these – So, again, back to Judge Thomson's question, what good does it do you, the judicial numbers? The cases that I've – I'm well aware of Section 5. The parties can provide by – the parties can provide by contract for something different, and this appears to be a contractual provision that will substitute somebody with a similar code of procedure. And if that was central to the agreement, then I think that Trump's Section 5, everything about arbitration is contractual anyway. Have I answered your question, Justice Schumer? Well, I don't know what to say. In that case, I'll be – if you tell me where I've missed, I'll be glad to try to answer it more completely. The – one of the salient points, I think, though, is that if you give suit its ordinary meaning, then what you've got, that specific meaning, you have a specific statutory provision that is referable to 1679G, the private cause of action, which, no question, I agree with the defendants on this, that's a generic, generalized language in the private cause of action. Now, we part company at that point for reasons I'm going to get to, but if you – the specific meaning suit, that creates a specific statutory provision referable to a general provision, and specific provisions modify and control general. Therefore, right to sue is conferred into the generic language of the private cause of action. I don't think I followed that argument. Take me through the statutory language and explain it. I didn't understand it. The – if you give the word right to sue. Okay, start at disclosures required, 1679CA. That's – and you have the right – you have a right to sue a credit repair organization that violates the Credit Repair Organization Act. If you give the word sue, their argument posits that sue has an ordinary meaning. But if it does have its ordinary and customary meaning of proceedings in a court of law, then that's a statutory provision that is a lot more specific than the generic language in 1679G that has – you know, frankly, the kind of language that, unless otherwise modified, has usually been held not to preclude arbitration. But the specific – the specific term. But the operative words of the statute only create a right to a disclosure of the right to sue, not a right to sue. The statute discloses four rights that are all referable to other statutory provisions, two of them in the Fair Credit Reporting Act and two of them in the Crow itself, one being the right to cancel after three days, the other being the right to sue that is referable to the private company. Where is the right to sue other than in the provision that says, here are the words of the disclosure statement that you put in your handout? That's it, Judge Kleinfeld. But, again, it's a specific provision. It looks as though the liability section that says what they have to pay if they do you wrong is 1679Ga. Yes, sir. And that doesn't say there's a right to sue. It just says what the extent of liability is. That's entirely correct. But, again, my point is, is that the specific provision, right to sue, is going to control and modify the very general language of 1679G. That's why it's there. And if you don't, if you use any other term than right to sue, one of the stated purposes of the statute is to give the consumer sufficient information to make a decision, take out this contract. But if you say something other than sue, if sue means what the defendant's contended means, then you're not informing the consumer, you're misleading the consumer, and it frustrates the purpose of the statute. I see that the yellow light's been on for a while, so I should probably get ready to sit down. Does the Court have any other questions? No. Thank you, counsel. Thank you, Your Honor. We, unfortunately, don't have time for more, so Greenwood v. Cockney credit is submitted unless my colleagues have further questions.
judges: Kleinfeld, Tashima, Thomas